EDWARD C. SMITH, Appellant, *v.* MARY A. WASHINGTON, Respondent.

### March 7, 1882.

1. Courts of equity will not enforce state claims, and will refuse to aid a party who is guilty of gross laches and unreasonable delay in asserting his rights.

2. One tenant in common of a defective title, whose co-tenant's interest is derived from him by quit-claim deed, is under no such obligation to his co-tenant as will constitute him a trustee for the latter of a superior outstanding title purchased by him.

APPEAL from the St. Louis Circuit Court, HORNER, J. *Affirmed.*

H. H. DENISON & N. HOLMES, for the appellant: The defendant and plaintiff were in privity of title and estate — were tenants in common. — 1 Washb. on Real Prop. 564 [*416]; *Adams* v. *Frothingham*, 3 Mass. 362.   A privity of claim and right in the property establishes a fiduciary relation, and equity will grant relief against any fraud which is a breach of equitable duty belonging to that relation. — *Flagg* v. *Mann*, 2 Sumn. 544, 547; *Chesterfield* v. *Janssen*, 2 Ves. Sr.156.   It is a general doctrine that a party acquiring a

title by fraud will be held a trustee for the party injured, under the head of fraud. — *Rutherford* v. *Williams*, 42 Mo. 31, 32 ; *Brown* v. *Lynch*, 1 Paige Ch. 158 ; *Boyd* v. *Mc-Lean*, 1 Johns. Ch. 582. The principle applies with peculiar force to persons standing in the relation and privity of tenants in common. — *Van Horne* v. *Fonda*, 5 Johns. Ch. 407 ; *Picot* v. *Page*, 26 Mo. 420, 421 ; *Sneed* v. *Atherton*, 6 Dana, 278–281 ; *Britton* v. *Handy*, 20 Ark. 401–403 ; *Lee* v. *Fox*, 6 Dana, 176 ; *Weaver* v. *Wible*, 25 Pa. St. 270 ; *Venable* v. *Beauchamp*, 3 Dana, 324 ; *Jones* v. *Stanton*, 11 Mo. 437 ; *Rothwell* v. *Dewees*, 2 Black, 618 ; *Tisdale* v. *Tisdale*, 2 Sneed, 598. It is no less applicable to the relation of vendor and vendee. — *Rapp* v. *Lowrey*, 30 La. An. 1275 ; *Galloway* v. *Finlay*, 12 Pet. 295.

GLOVER & SHEPLEY, with whom are HENDERSON & SHIELDS and J. S. DOBYNS, for the respondent : A quitclaim deed conveys only the present right of the grantor, and the grantee can get by enurement no title that may have come to the grantor after the making of said deed, and the deed is ineffectual to pass any after-acquired title or right. — *Bogy* v. *Shoab*, 13 Mo. 380 ; *Gibson* v. *Chouteau*, 39 Mo. 536–566 ; *Bateson* v. *Rogers*, 60 Mo. 138 ; *Kimmil* v. *Benna*, 70 Mo. 52–68.

BAKEWELL, J., delivered the opinion of the court.

The petition in this case contains the following allegations : —

On June 14, 1873, defendant agreed with John F. Darby that he should act as her attorney in asserting her rights to certain lands in Missouri and Arkansas which she claimed to own by inheritance from her father, Samuel Hammond ; and, in consideration of professional services, rendered and to be rendered by Darby in the matter, agreed to convey to him one-half of whatever real estate should be recovered, in full compensation for his services. Darby entered upon the fulfilment of the agreement on his part, and performed

services thereunder. Afterwards, on June 20, 1873, de fendant, under said agreement, in consideration of $100, quit-claimed to Darby one undivided half of all her in terest in a tract in St. Louis, known as United States Survey 2500, located under New Madrid certificate, No. 161. Darby, on October 25, 1880, quit-claimed to plaintiff all his interest in the property described above. The quit-claim deeds for this property from Mrs. Washington to Darby, and from Darby to plaintiff, were recorded on October 25 and 27, 1880.

Defendant, on June 20, 1873, owned, and was entitled to the possession of, an undivided interest in said tract, as tenant in common with the heirs of Samuel Hammond, deceased, or their legal representatives. On and before March 31, 1877, certain persons claiming to be the heirs of Peter Lindell, deceased, or their legal representatives, and being then in actual possession of said tract, had made partition of the same among themselves, assigning to each in severalty certain portions of said tract according to a plat of a subdivision of the tract called Peter Lindell's Second Addition to St. Louis. At that date and afterwards, defendant, without the knowledge of Darby, and in fraud of his rights, and in fraud of plaintiffs' rights, together with the other heirs of, or legal representatives of, said Hammond, claiming the same as tenants in common with her in undivided shares, entered into an agreement with persons claiming to be the heirs of Peter Lindell, or their legal representatives, for a compromise of their respective claims to said tract, and for a partition of certain designated portions thereof according to the said plat of Lindell's Second Addition ; and, fraudulently concealing from them the fact that she had conveyed one undivided half of her interest in said tract to Darby, induced them to enter into this compromise and partition of said tract with her and the other heirs of Hammond, co-tenants thereof with her, without notice to them of her agreement with, and deed to, Darby.

In virtue of this compromise and partition, John Baker and wife conveyed to defendant, on March 31, 1877, an undivided fifteenth of lot 66 of Lindell's Second Addition, which is fully described. Robert J. Coleman and wife, in virtue of the same compromise and partition, conveyed to defendant one undivided fifteenth of lot 67 of said addition. Lyman W. Patchin and wife were induced, as aforesaid, to convey to defendant one undivided fifteenth of lot 65 of said addition. Charles H. Peck and wife were in the same way induced to convey to plaintiff one undivided fifteenth of lots 6 and 7 of subdivision of lot 47 of said addition.

This interest of one undivided fifteenth, was conveyed to defendant as her undivided share as one of the heirs of Hammond, holding the same as a tenant in common with the other Hammond heirs. No partition has been made by them, and the actual possession of said several parcels was, at the same time, delivered over to the Hammond heirs, including defendant, to hold as tenants in common.

Defendant, in pursuance of said compromise and partition, together with the other Hammond heirs and representatives, excepting Darby, at the dates of the conveyances to defendant, and before the deeds to and from Darby were recorded, quit-claimed all their interest in other parcels of land, portions of Lindell's Second Addition, to the Lindell heirs, according to their claims or possessions of the same under their partition. Defendant, in co-operation with her co-tenants, conveyed the whole interest of one undivided fifteenth claimed by her as one of the Hammond heirs in said parcels, to the Lindell heirs, pretending to be the owner of the same, and concealing the fact of her previous conveyance to Darby, though she was then the owner only of a half of the same as tenant in common with Darby. By virtue of all this defendant obtained from these other persons the actual possession of said undivided fifteenth of the lots conveyed by them to her, and holds the same as one of the heirs of Hammond holding the same as tenants

in common of undivided shares, to the exclusion of plaintiff.
By reason of all which, defendant pretends that she has
acquired a paramount title adverse to that of Darby and
plaintiff by force of the statute of limitations operating upon
an actual adverse possession in her and her grantors for more
than ten years before the commencement of this suit.

Plaintiff claims that Darby was at that time a tenant in
common with defendant of the one undivided fifteenth of
said land; that such title and possession were acquired by
her in fraud of Darby's rights, and are void in law, and of
no avail to her as against Darby her co-tenant, and plaintiff
holding under him, and that the same were, in law and equity,
acquired for the common benefit of defendant and plaintiff;
and were acquired by her by means of fraud practised by
her upon Darby and said other parties, and are still held
by her adversely to plaintiff, in actual ouster of his pos-
session and in fraud of his rights as tenant in common
with her.

The prayer is, that defendant be declared a trustee for
plaintiff's use, in respect of one-half of the undivided fifteenth
of tracts conveyed to her, and be declared to hold the
same as tenant in common with plaintiff; that one-half of
the undivided fifteenth in these lands so acquired by her, be
divested out of defendant and vested in plaintiff, and that
plaintiff be put in possession as a tenant in common with
defendant and the Hammond heirs; and for a restraining
order and general relief.

The petition was filed on February 11, 1881.

Defendant demurred, on the ground that the petition
does not set forth sufficient facts to constitute a cause of
action.   The demurrer was sustained, and there was final
judgment for defendant.

The various deeds and written instruments referred to in
the petition, were filed with it as exhibits; but they are not
set out.   They were before the trial court; but we can

know nothing more about them than is stated in the petition.

The case is this : —

W. and others claim to have inherited certain lands from H., their deceased father. But these lands are in the possession of other parties who claim adversely to the heirs of H. W. agrees with an attorney, D., that if he will sue for these lands, he shall receive as compensation, one-half of her share of what is recovered, and at the same time delivers to him her quit-claim deed for one-half of her interest in these lands. One of these tracts is a subdivision, suburban property laid out into blocks, in the possession of the heirs of L., who claim adversely to the heirs of H. D., the attorney, does not record his deed, does not sue for these lands, though he renders some services under the agreement, the nature of which does not appear. Meanwhile, W. and the other heirs of H. prosecute their claims with such success, that, at the end of four years, the heirs of L. are disposed to compromise. As one result of this compromise, the heirs of H., including W., quit-claim to the heirs of L. certain blocks in the subdivision, and leave them in quiet possession of those ; and the heirs of L. quit-claim other blocks to the heirs of H., including W., and put them into possession. These deeds are recorded, and all the world has notice of them ; and the process of executing them goes on for a year or two. Meanwhile, no one has notice of the quit-claim deed of W. to D. He seems to have lost all interest in the matter. He sits supinely by, and, seven years and a half after his agreement with W. and her deed to him, and three years and a half after the recording of the first deed of the heirs of L. to W. as an heir of H., he, for the consideration of $100, quit-claims to a stranger any interest that he may have acquired under the quit-claim deed of W. This stranger at once records the deed of W. to D. and of D. to him, and, four months afterwards,

brings this suit, in which he claims, in virtue of these facts, one-half of any interest which W. may now have in the specific lots conveyed to her and the other heirs of H. by the heirs of L., which lots, with other portions of the tract, W., at the time of her quit-claim deed to D., claimed, together with the other heirs of her father H., in right of her father.

It is evident that plaintiff has brought a lawsuit, and a lawsuit which it is apparent,— and we remark the fact as creditable to his judgment,—the lawyer who sold it to him regarded as hopeless. That lawyer probably considered that, after standing idle for seven years and a half, during the most part of which time Mrs. Washington and the other Hammond heirs were fighting their battles without him, — after remaining inactive whilst the Hammond-Lindell compromise was being perfected by means of deed after deed recorded as executed and notice to the whole world of what was going on, he could hardly hope, on the strength of his unrecorded, quit-claim deed, to enter into the fruit of the labors of others. He knew that a court of equity would ask him what he had been doing in the matter during these many years; and, if he thought that, unless he could satisfactorily answer that question, no further attention would be given to his case, he certainly had very discouraging precedents to warrant such an opinion; amongst which we may cite *Castner* v. *Walrod* (83 Ill. 171), in which the court says : " If the property is of a speculative character, it is the duty of the man complaining of fraud to put forward his complaint at the earliest possible time. He cannot be allowed to remain passive, prepared to affirm the transaction if it should prosper, or to repudiate it, if this should prove to his advantage." What delay will defeat a recovery in equity, depends upon the peculiar circumstances of each case, and is not defined by any statute of limitations. There is no artificial rule to determine when a claim is stale ; but unreasonable delay and mere lapse of

time are an equitable defence ; and courts of equity always refuse to interfere where there have been gross laches in the prosecution of rights.    *Bliss* v. *Pritchard*, 67 Mo. 181. It must be admitted that there is nothing persuasive about a case in which a lawyer, having slept upon his own and his client's rights, sells for a trifle a claim against his client's property which he considers so doubtful that he will not assert it himself.·

The grantee in a quit-claim deed takes only the title which the grantor had at the time of the conveyance. As there are no covenants, it is not even contended that the deed of Mrs. Washington to Darby could operate to convey any subsequent title which Mrs. Washington might acquire. At common law, no estate passes by the deed of one actually disseised at the time. But, by statute in Missouri (Rev. Stats. 673), the fact that the grantor is disseised at the time, is no bar to the operation of the deed. The statute modifies the common-law rule ; but is not intended to give to a mere release or quit-claim deed the operation of a deed with covenants. It does not provide that a deed without covenants shall work an estoppel, or operate in any way to convey a title subsequently acquired.

Cases are cited by appellant in which, by virtue of privity of contract or privity of title, it has been held that such a fiduciary relation existed between the co-tenants in those particular cases, that an adverse title purchased by one, was declared to be held in trust for the other also. But those cases rest upon their particular facts, and seem to be, all of them, distinguishable from the case at bar. *Van Horn* v. *Fonda* (5 Johns. Ch. 388), for instance, which is frequently referred to, was a case of two devisees in possession under an imperfect title derived from a common ancestor, and, under the peculiar circumstances of the case, the chancellor did not doubt that a purchase by one ought to enure to the common benefit, subject to an equal contribution to the expense, and that the deed for an outstanding

title was taken for trust purposes, though the chancellor (Ch. Kent, p. 407) is careful to say: " I will not say, however, that the tenant in common may not in any case purchase an outstanding title for his exclusive benefit. But when two devisees are in possession, under an imperfect title derived from a common ancestor," etc. And no case is cited by the learned counsel for appellant, in which a tenant in common, holding under a quit-claim deed by which alone the co-tenancy has arisen, can hold his grantor in the quit-claim as a trustee for an adverse title purchased by him.

If Mrs. Washington had been the sole heir of Hammond, and, having no confidence in the Hammond title, had quit-claimed all her interest in the Hammond title to a stranger, of course she might have bought the Lindell title after that; and had she been put in possession under the title thus acquired, if the Lindell title was the better title she might have held against all the world and the holder of her quit-claim deed, on the strength of her after-acquired title, being estopped by no covenants.

And now, the property in question being out of the possession of the Hammond heirs, she claiming a fifteenth as an heir of Hammond, if she quit-claimed one-half of her interest to a stranger, and then purchased the title of those in possession, no reason appears why that stranger should derive any benefit from her subsequent purchase.

She effected that purchase, it is true, by conveying to those in possession, by quit-claim deed, all her interest as an heir of Hammond. That interest they have. Whether that interest at the time she quit-claimed to them was a fifteenth, or, in consequence. of her former quit-claim to Darby, only a thirtieth, seems to be a matter that concerns her grantees, the Lindell heirs, alone. If Darby had recorded his deed, perhaps Mrs. Washington could not have effected her compromise. If Darby's legal representatives

should ever recover a thirtieth from them on account of Mrs. Washington's prior conveyance to Darby, undoubtedly they would complain.   But why should Darby, who bought a half of Mrs. Washington's interest in the Hammond title on speculation, for a song, or plaintiff, who bought Darby's speculative interest after Darby had stood by for seven years and seen Mrs. Washington acquire another title to this property, proceed to reap the benefit of Mrs. Washington's exertions, and become tenants in common with her of this property under the new title to it which she has acquired?   They cannot do so on any principle which seems deducible from the facts of the cases which they cite in support of this petition.   As we have said, the facts in each one of those cases are so different from those in the case at bar that none of them form a precedent for a recovery in the present case.

We think that the circuit court committed no error in sustaining the demurrer, and its judgment will be affirmed. Judge THOMPSON concurs ; Judge LEWIS is absent.