# WHEELING.

WILSONS *v.* HARPER *et al.*

Submitted June 16, 1884.—Decided November 22, 1884.

(*WOODS, JUDGE, Absent.)

| 25 | 179 |
|----|-----|
| 41 | 273 |
| 41 | 467 |
| 41 | 582 |
| 25 | 179 |
| 48 | 452 |
| 25 | 179 |
| 49 | 290 |
| 25 | 178 |
| 54 | 617 |

1.  When a suit is brought in equity upon a claim, which is legal in its nature, by analogy the statute of limitations will apply. (p. 182.)

2.  When the statute of limitations has begun to run against an ancestor, it will continue to run against his infant heirs, unless otherwise specially provided by statute.   (p. 182.)

3.  When the cause of action arose twenty-five years before suit was brought, and the justice of the demand depended upon merely

*Counsel below.

oral testimony as proof of payment of a debt, for which land was
sold under a deed of trust, even if for the greater portion of the
time those interested in showing such payment were infants,
equity would hesitate to grant relief, though the statute of
limitations did not apply.   (p. 182.)

4. Where a court of equity erroneously canceled deeds, and ordered a
conveyance to be made to the plaintiffs and directed a writ of pos
session to issue to put them in possession of the land, and this
Court reversed the decree on appeal granted without *supersedeas*,
it will not here dismiss the bill, but will remand the cause with
instructions to place the parties *in statu quo* and then dismiss the
bill.   (p. 184.)

The facts of the case are stated in the opinion of the Court.

*G. D. Camden*, for appellant.

*C. J. P. Cresap*, for appellees.

Johnson, President :

The devisees under the will of William J. Wilson filed
their bill in the circuit court of Randolph county in Sep-
tember, 1869, alleging that their father owned about four hun-
dred acres of land in Randolph county, and being indebted
to one George H. Damren in the sum of $431.84 on the 24th
day of October, 1841, executed to Robert Bodkin a deed of
trust on said land, and on twenty-five head of cattle and six
horses; that said Wilson paid off and discharged said debt;
but notwithstanding such payment the said trustee sold said
land under said trust for the sum of $100.00, and said Dam-
ren became the purchaser, and said land was conveyed to
him; that said property was not advertised, and that the deed
of the trustee does not state when the property was sold; that
their father died soon after the debt was paid, when the plain-
tiffs were young; that Damren pretending said debt was not
paid and fraudulently intending to cheat complainants out of
said land required said trustee to sell it; that said Damren
was then dead, and his heirs, if he had any, are unknown to
plaintiffs; that said Damren on the 9th day of October, 1847,
sold said land to William J. Wilson the second, (and exhibits
the conveyance to him which is a deed of special warranty);
that said Wilson conveyed 230 acres of said land to Eli Bland,
on the 13th day of August, 1850, (and the deed, which

contains a special warranty, is exhibited with the bill); and that the heirs of said Bland had sold said 230 acres of land to Martin H. Harper, who is now in possession thereof.

The record shows, that said heirs have conveyed said 230 acres to Martin Harper by deed of special warranty; that all said grantees, when they purchased, respectively had notice of the fraudulent sale of said land under said deed of trust. Copies of all said deeds are exhibited with the bill. The bill prays that each and all said conveyances may be set aide.

The bill alleges, that Damren is dead, and that if he had heirs, they are unknown to plaintiffs; yet the bill is matured for hearing by an order of publication against Damren with others, who, the clerk certifies in the order of publication, it appears are not inhabitants of this State. The bill seems to have been properly matured as to all the other defendants.

Martin H. Harper, who was in possession of the land, is the only defendant who answered the bill, and he denied all the allegations of the bill in any way affecting his title to said land and relied as a defense on lapse of time and the statute of limitations.

On the 30th day of October, 1875, the court reciting that the bill had been matured for hearing by process served on all the home-defendants and by order of publication duly executed as to all the non-resident defendants, and reciting "the plaintiffs disclaiming all right to relief in this suit as to any of the lands embraced in the deed from George H. Damren to William Wilson, if any there be, which may not be embraced in the 230 acre tract, conveyed in said deed from Simpson and others (heirs of Eli Bland), to said Harper," proceeds to cancel and hold for naught the deeds from Bodkin, the trustee, to Damren, from Damren to Bland, and from the heirs of Bland to Martin H. Harper, so far as they embrace the said 230 acres of land, and requires Harper to convey said 230 acres by deed of special warranty to the plaintiffs, and unless he did so within ninety days, ordered a special commissioner therein appointed to make such deed; and after decreeing costs against said Harper ordered a writ of possession to issue to put the plaintiffs in possession of said lands.

From said decree an an appeal without *supersedeas* was granted.

Depositions were taken in the cause, which are very meagre on all the points involved. The mother of the four plaintiffs in her deposition says: Andrew J. Wilson was born in August, 1839, and Martha E. Wilson was born in November, 1846, she does not give the ages of the other two. She also says, that her husband, their father, died in April, 1847. Another witness states in his deposition, that William J. Wilson died in April, 1847. Still another witness, a son, in his deposition says he died on the 17th of April, 1847. One of the plaintiffs then was about four years and five months old when the deed to Damren was executed, and another was not born until two years and ten months after that time. The other two children were evidently older. But it also clearly appears, that W. J. Wilson lived more than three years after the deed was executed.

This is a demand in its nature legal, and a court of equity in a case like this will by analogy apply the bar of the statute of limitations. (*City of Wheeling* v. *Campbell*, 12 W. Va. 36.) The cause of action arose, as soon as the sale was made under the deed of trust, certainly as soon as the deed was made. An injunction would have been entertained by a court of equity to restrain the sale, on the ground that the debt had been paid. The statute began to run at least three years before the death of W. J. Wilson. It is well settled that when the statute of limitation has begun to run in the lifetime of the ancestor, it will not cease to run against his infant heirs, unless so specially provided by statute. Angell on Lim. section 477, and cases cited; (*Moore* v. *Jackson,* 4 Wend. 58; *Floyd* v. *Johnson,* 2 Litt. 109; *Caperton* v. *Gregory,* 11 Grat. 505.) The time prescribed by the statute, to bar an entry on land, at the time the cause of action arose in this cause, was fifteen years. (Acts 1836–'7, p. 11, sec. 1.) And there was nothing in that act to arrest the running of the statute in favor of the infants. (*Caperton* v. *Gregory,* 11 Grat. 505.) This suit was not brought for twenty-five years after the right of action accrued. The bar of limitation is complete in this case.

But if this were not so, after such a great lapse of time a court of equity would be slow indeed to grant relief in a case

like this. Some of the parties are dead; it is extremely difficult to remember the details of transactions, which occured a quarter of a century ago ; and there is no certainty of doing justice after so long a time.   But if this were a case promptly brought, no relief ought to be granted, because the case as made in the bill is not proved.   The trustee shows that he advertised the land according to the terms of the deed; and from his deposition it appears, that the property was regularly sold. Why the personal property was not sold does not appear.

The attempt to prove payment of the debt utterly fails. All the evidence on the subject is in substance as follow: The trustee Bodkin says: "There was a payment made on said deed of trust; the money was raised by the sale of a lot of cattle.   The cattle were sold by Wilson himself, it being agreed upon by the parties in interest.   The cattle were sold to St. Clair Stewart and the money paid by him to Damren." "I cannot tell you certainly how many cattle were sold." In answer to question "Were all the cattle in the deed of trust sold or not?" said: "I think they were." Further said the cattle were sold a year or two before the land.   St. Clair Stewart in his deposition says: "I did buy a lot of cattle of him, the number of the cattle I can't recollect particularly nor I don't recollect the price—the amount of money.   The nearest I can suppose the number to be is under twenty.   I recollect the lot I took from his house was a very heavy lot of fours, going on five, and I can't say whether I got all the cattle there or *other where* of him, and to whom I paid the money for the cattle, I can't get that settled in my mind. * * The proceeds of the sale of these cattle was to be applied to the payment of a deed of trust due by William J. Wilson to George H. Damren." . In answer to question, "Do you know whether or not the price of said cattle satisfied said debt?" said, "I was of that opinion.   I never heard any thing else."   On cross-examination he shows that he cannot remember the number or price of the cattle, nor what cattle were worth at the time, says he is certain he paid the money to Damren or his brother, but thinks he paid it to his brother who, he says, by agreement of Wilson and Damren was to receive it.   Henry W. Wilson says that beef at that time sold for two and one-half or three cents per pound net; that

four year old cattle were worth from sixteen to twenty-five dollars per head. That his recollection is that there were seventeen of the cattle, about the half of them between three or four. Some papers were also introduced, showing a sale of cattle, and an order to credit on the debt $88.63.

It will be seen that this is all vague and indefinite, as might be expected after such a lapse of time.

There are rather loose declarations and conversations, to show that each of the grantors had notice that the deed from Bodkin to Damron was not a good title to the land, but it is not necessary to consider this evidence.

The decree of the circuit court of Randolph county rendered on the 30th day of October, 1875, is reversed with costs to the appellant, Martin H. Harper; and this cause is remanded to the circuit court of Randolph county with instructions to cancel any deed that may have been made by the commissioner appointed by said decree, and to restore the possession of said land to said Harper, if he has been deprived thereof under any writ of possession issued in said cause; and when the parties are thus placed *in statu quo* to dismiss said bill at the costs of the plaintiffs.

Reversed.