## GIBSON *v.* HERRIOTT.

Decided November 14, 1891.

1. *Trust—Purchase by administratrix.*

The rule which forbids an administratrix to purchase real estate sold by her to pay debts is violated if she becomes interested therein after sale but before confirmation ; and the sale is voidable, at the instance of the heirs, without showing actual fraud or injury.

2. *Laches—Permitting improvements.*

Unexplained delay upon the part of adult heirs for the period of seven years will bar a suit in equity to cancel such a purchase by an administratrix, although the defense of the statute of limitation was not made by plea or demurrer, if it appears that they have permitted her, without notice of their claims, to make permanent improvements upon the land whereby its value was greatly increased, and to pay the debts of the estate with the proceeds of the sale.

3. *Laches of married woman.*

A married woman is chargeable with laches with respect to her separate property.

4. *Laches—Infant.*

While an infant is not chargeable with his own laches, yet where time has commenced to run against an ancestor, it, continues to run against his infant heir.

5. *Evidence—Pleading.*

A sworn pleading of a party in one suit is admissible against him in another as evidence in the nature of an admission, subject to rebuttal and explanation.

6. *Purchase by widow-administratrix—Dower land—Laches.*

The purchase by a widow-administratrix, at her own sale, of the reversion in lands which had been assigned to her as dower will not, at the instance of adult heirs, be set aside, after unreasonable delay, where she purchased other lands of the estate, at the same time with the reversion, as an entire transaction, and made improvements referable to the entire interest which she claimed by virtue of the dower and her purchase.

7. *Improvements—Constructive fraud.*

Where an administratrix, being widow of the intestate, purchased lands of the estate, some of which were subject to her dower, and the sale was set aside, as to infant heirs, not for actual but for legal fraud, it was held (1) that, as to the lands not subject to dower, she was entitled to compensation for the full value of her improvements, less rents, and to have the purchase money and taxes paid by her refunded ; and (2) that, as to the lands subject to her dower, she was entitled to have only the purchase money refunded.

APPEAL from *Jefferson* Circuit Court in chancery.

JOHN A. WILLIAMS, Judge.

*W. P. & A. B. Grace* for appellants.

1. We accept the rule that a trustee to sell for others cannot, either directly or indirectly, purchase for his own benefit. 41 Ark., 269. But in this case there is no proof of fraud, and the only evidence is the slight presumption which might arise from the fact that three days after the sale the administratrix bought in her own right from the purchaser. See 33 Ark., 585. The sale was made fairly and honestly, and without collusion or fraud. The sale was valid at the time it was made, and no subsequent act of the administratrix could invalidate it.

2. The probate court had the power to either reject or confirm the sale, " but in the exercise of this discretion a

proper regard is had to the interest of the parties and the stability of judicial sales." Rorer, Jud. Sales, sec. 106.

3. Irregularities, if any, not amounting to fraud, were cured by confirmation. 25 Ark., 52. The order of confirmation related back to and carried title as from the date of sale. Rorer, Jud. Sales, sec. 109. This case falls clearly within the rule in 33 Ark., 585. There was no understanding whatever at the time that the administratrix should share in the benefits of the sale.

*Thomas J. Ormsby, M. L. Bell* and *Thomas B. Martin* for appellee.

1. The intention of the statute is that an administrator, at the time the sale is made and report and confirmation sought, should not in any manner be interested. Mansf. Dig., sec. 176. If he is, the sale cannot stand if attacked. 41 Ark., 269. It was a fraud to conceal the fact that she had bought from the purchasers. Rorer, Jud. Sales, sec. 107. An administration sale is a judicial sale, and passes no title until confirmation. 47 Ark., 419; 18 Vt., 394; 9 Cal., 181. Courts of equity, from motives of public policy, declare such sales fraudulent. 4 How., 559; 47 Ill., 114, 115; 2 Johns. Chy., 252; 23 Ark., 622; 34 *id.*, 63; 33 *id.*, 575; *ib.*, 294; 8 Wheat., 421; 10 Pet., 269; 6 Wheat., 481; 9 Paige, 649; 43 Ill., 123; 11 Foster (N. H.), 70; 4 Johns. Ch., 120; 22 Penn., 327; 30 Ark., 48; 11 Wall., 236; 36 Ark., 399; 40 *id.*, 393; 20 Mo., 294; 3 Green (N. J.), 87; 44 N. Y., 237.

2. No plea of limitation was interposed below. Wood on Lim., sec. 7. At law, if not pleaded it is waived. 78 Ill., 81; 31 Ark., 684; 29 Oh. St., 245. Equity follows the law. 43 Ark., 484. But the administratrix held the property as trustee, 26 Ark., 447, and her possession was not adverse. Wood on Lim., p. 419; Perry on Trusts, vol. 2, p. 493; 2 Des. (S. C.), 233; 4 *id.*, 77; 2 Marsh. (Ky.), 445; 22 Ark., 6. In this case the administratrix has never been discharged, and the trust still subsists. 46 Ark., 35. See also

7 Johns. Chy., 114; 16 Ark., 124; Wood on Lim., pp. 113, 114; 99 Mass., 213.

3. The claim is not stale, nor can laches be imputed. 28 Beav., 303; 2 Hawks (N. C.), 486; 6 Wheat., 497; 4 How., 561; 16 Ark., 127.

*W. S. McCain* for appellants in reply.

1. An administrator cannot purchase at his own sale in Arkansas. Several States decline to follow this rule. 2 Woerner, Am. Law of Adm., sec. 234, and note.

2. There is no proof that the administratrix was interested in the sale, but this court is asked to declare that, after a valid sale has been made by an administrator, he is still disabled from negotiating with the purchaser until after confirmation. *Ratione cessante, lex cessat.* See 24 Grat. (Va.), 225; 6 Harr. & J. (Md.), 78, 80; 79 Va., 602; 97 Mass., 198.

3. A purchase made by an administrator *per interpositam personam* is not void, but voidable only. 13 Allen, 417; 110 Mass., 373; 46 Ark., 25. The right to avoid may be lost by acquiescence. 36 Ark., 383; Pom. Eq., secs. 818, 820; 34 Ark., 467. In equity it is not essential to plead the statute of limitations. 39 Ark., 163. The length of time depends upon the peculiar circumstances of each case. 22 Ark., 6. The time is never longer in equity than at law. 43 Ark., 484. The statute as to judicial sales is five years, and married women have no immunity under the act. 47 Ark., 558. When Mrs. Gibson took a deed in her own name and placed it on record, this was a declaration of hostility. 50 Ark., 141. Limitation confers an affirmative title. 34 Ark., 534, 547.

4. The decree as to rents is erroneous. Freeman on Judg., 150; 52 Ark., 381.

*Met L. Jones* also for appellants.

There is not an incident in the entire transaction upon which to base a charge of fraud. Circumstances of mere suspicion are not sufficient. 38 Ark., 419. The *onus* was on the attacking parties. 25 Ark., 225; Story, Eq. Jur., 713. Even if the sale was voidable, appellees are barred by their

acquiescence for so long a time.  34 Ark., 467.  Construc-
tive fraud is all that can be claimed in this case, and the
doctrine of constructive fraud does not apply to sales under
process of law.  3 J. J. Marsh., 644; Lord Raymond, 724;
4 Dall., 108.

BATTLE, J.   Solomon Walton died on the 4th of Novem-
ber, 1876, in Jefferson county in this State, intestate, leaving
Belle Herriott, Rosa E. Lindsay, Kate Hinton and Sallie E.
Whitley, who were his children, his only heirs him surviving.
He was at the time of his death a married man, and left his
wife, M. A. Walton, who is now the wife of John W. Gib-
son, surviving.   At his death he was the owner of personal
property and about 860 acres of land, of which 265 acres
were cleared and in cultivation; and was much in debt.
Shortly after his death Mrs. Walton administered on his
estate; and sometime thereafter dower in his land was set
apart and assigned to his widow.   His personalty not being
sufficient to pay his debts, his administratrix applied to the
Jefferson probate court for an order to sell the lands which
had not been assigned as dower, and the reversion in the
other, to pay the debts remaining unpaid.   The probate
court granted the application at its July term, 1879, and au-
thorized and directed the administratrix to sell all the lands,
including the reversion in the land assigned to the widow as
dower.   On the 24th of September, 1879, the land which
had not been assigned to the widow was sold at public
auction to E. W. Martin and F. J. Wise at and for the sum
of $2800, they being the highest bidders therefor, and the
other land was sold to Frank Tomlinson, subject to the
dower, for $750, no one offering more for it.   Martin and
Wise, not being able to comply with the terms of the sale,
induced Louis and Joseph Altheimer to take their bid.   Be-
fore they did so they purchased from Tomlinson the right,
claim and interest acquired by him at the sale and procured
from him an assignment of his bid.   They (the Altheimers)
having complied with the terms of the sale, the administra-

trix, on the 27th of September, 1879, conveyed to them the said lands and reversion, reserving a lien for the unpaid purchase money. Attempting and failing to purchase of the widow her interest in the lands set apart to her as dower, they proposed to sell to her the lands and reversion in lands conveyed to them. Persuaded by her friends to accept this proposition, she purchased the land and reversion on a credit of four years, agreeing to pay one thousand dollars more for it than the sum for which she sold it. In pursuance of their agreement the Altheimers, on the 30th of September, 1879, conveyed to her the lands, including the reversion. Afterwards, on the 15th of October, 1879, the administratrix made a written report of the sale of the land, including the land assigned as dower, made by her, as evidenced by her conveyance to the Altheimers, to the probate court, which on the same day approved the sale; and, with the proceeds of the sale so approved, the administratrix paid the said debts of her intestate.

At the death of Solomon Walton the land was in bad condition; the houses were dilapidated; only a few of them were fit for use. The fences on it were not sufficient to protect the crops, which were thereafter grown on it, against the trespasses of cattle. There were 265 acres cleared and prepared for cultivation. The annual rental value of the land was $800 or $1000. The widow attempted to rent it for $800, but failed. After she purchased it from the Altheimers, she cleared 230 acres of it, twenty or thirty acres of which were on the land which was set apart to her as dower; built fifteen tenant houses on the land; dug eight or ten wells; put a new fence around the cleared land as often as twice, one and a quarter miles of which was a wire fence; erected on the land a large barn, a new gin house, saw and grist mills and cotton press; put in the gin house a new cotton gin; attached to the saw and grist mills and cotton gin new steam machinery so as to operate them by steam; and expended a large sum of money in improving the land. The

annual rental value of the land, after these improvements. were made, has been and is $2500.

After this, on the 13th day of July, 1887, Belle Herriott,. Rosa E. Lindsay, Kate Hinton, and their husbands, and William M. and Daniel E. Whitley, minors, the heirs of Sallie E. Whitley, who is dead, by their next friend, brought. this action in the Jefferson circuit court against M. A. Gibson and her husband. They alleged in their complaint that the sale to the Altheimers and the conveyance by them to the widow were fraudulent, and asked that the deed executed by the administratrix as before stated be canceled, and that Mrs. Gibson be declared to be a trustee holding all the land, except her life estate therein which was her dower,. in trust for them. The defendants answered, but did not plead the statute of limitations. The circuit court held that the sale made by the administratrix on the 24th of September and the conveyance by the Altheimers to the widow on the 30th of September were fraudulent, because she was under a disability to purchase until the sale was confirmed, and that she held the land, including the reversion in the land set apart as dower, in trust for the plaintiffs ; and decreed accordingly. Did the circuit court err?

As a rule no one occupying a relation of trust or confidence to another is permitted to purchase property for himself when he has, by reason of such relation, a duty to perform in respect to it which is inconsistent with the character of a purchaser ; or to do any other act which has a tendency to interfere with the faithful discharge of such duty.

1. Trust arises. when adminis-trator purchases at his own sale.

It matters not how fair, profitable or advantageous the purchase may be to the *cestui que trust,* courts of equity will set it aside upon the application of the *cestui que trust.* The object of the rule is to protect the *cestui que trust* against fraud and injustice, and to remove from persons holding such relations all inducements and temptations to speculate upon or control, for their own benefit, property held by them in trust or confidence. This rule applies to executors and administrators, and in this State has been ex-

tended to an attorney of an administrator who prepared and filed the petition of the administrator and obtained the order for the sale of property of the deceased. *West* v. *Waddill,* 33 Ark., 575 ; *Hindman* v. *O'Connor,* 54 Ark., 627.

The rule is clearly applicable to this case. At the time Mrs. Walton purchased, the sale made by her in her fiduciary capacity was incomplete, and she was the owner of all the interest, if any, acquired by it ; and the question was, should the sale by the administratrix which involved her own purchase be approved by the probate court ? If it was disapproved, she took nothing by her purchase from the Altheimers. Under these circumstances she, as administratrix, reported the sale made by her to the probate court for confirmation. It was, then, her duty to give to the court all the information in her possession which would have better enabled it to decide whether it was to the advantage of all parties concerned that the sale be approved ; and to resist the confirmation of it, if it had been unfairly conducted or its approval involved an unnecessary sacrifice to the estate of her intestate. It is obvious that her duties as administratrix at the time she purchased were inconsistent with the character of a purchaser. The heirs of the deceased could, therefore, have had the sale set aside, without showing actual fraud or injury. *Livingston* v. *Cochran,* 33 Ark., 294; *Terwilliger* v. *Brown,* 44 N. Y., 237.

**2. When rights lost by laches.** But the sale was not void, but voidable by the persons interested in the estate of Walton. To avoid it they must have made application to set it aside within a reasonable time. This right could have been lost through acquiescence or laches. Was it lost ?

Courts of equity have always discouraged laches and delay. The door of equity cannot forever remain open. In *Smith* v. *Clay,* 3 Brown, Ch. Rep., 640, note, Lord Camden, delivering the opinion of the court, truly said : "A court of equity, which is never active in relief against conscience or public convenience, has always refused its aid to stale demands, where the party has slept upon his right, and

acquiesced for a great length of time. Nothing can call forth this court into activity but conscience, good faith and reasonable diligence ; where these are wanting, the court is passive, and does nothing. Laches and neglect are always discountenanced, and therefore, from the beginning of this jurisdiction, there was always a limitation to suits in this court." *Wagner* v. *Baird*, 7 How., 234 ; *Bowman* v. *Wathen*, 1 How., 189.

But courts of equity have established no guide or rule by which it can be determined, in all cases, what will constitute such laches as will be a bar to relief. As to what delay in bringing suit, in the absence of a demurrer or a plea of the statute of limitations, as in this case, will constitute a bar, depends upon the particular facts and circumstances of each case. " Sometimes the analogy of the statute of limitations is applied ; * * * in some cases a shorter time is sufficient; and sometimes the rule is applied where there is no statutable bar." Whether the time the negligence has subsisted is sufficient to make it effectual as a bar, is a question to be resolved by the sound discretion of the court. *Wilson* v. *Anthony*, 19 Ark., 16 ; *Sullivan* v. *Portland, etc., R. Co.*, 94 U. S., 806 ; *Hanson* v. *Worthington*, 12 Md., 418 ; *Castner* v. *Walrod*, 83 Ill., 171 ; *Akins* v. *Hill*, 7 Ga., 573 ; *Spaulding* v. *Farwell*, 70 Me., 17 ; *Hayward* v. *National Bank*, 96 U. S., 611 ; *Phillips* v. *Rogers*, 12 Met., 405 ; Perry on Trusts, secs. 229, 230.

A delay of a party holding an equitable right to property which has permitted another, who holds the legal title, to expend large sums of money in the improvement of the property, and thereby greatly enhance it in value, which he would not have done had the right been promptly asserted, has usually been considered such laches as will preclude the party guilty of it from relief. If the party holding the equitable right would avail himself of it, he must assert it in a reasonable lime. Equity will not permit him to stand by and permit the other party, who holds the legal title, to improve and develop the property until it has become val-

uable or greatly increased in value, and then enforce his right; nor to wait until the future decides whether the property will increase or decrease in value and then elect to take it if it increases. He is not permitted to experiment or speculate in this way at the risk or expense of another. *Twin Lick Oil Co.* v. *Marbury,* 91 U. S., 587; *Royal Bank of Liverpool* v. *Grand Junction R. Co.,* 125 Mass., 490; *Harkness* v. *Underhill,* 1 Black, 316; *Hollingsworth* v. *Fry,* 4 Dallas, 345; *Cox* v. *Montgomery,* 36 Ill., 398; *Bliss* v. *Prichard,* 67 Mo., 181; *Smith* v. *Washington,* 11 Mo. App., 525; *Castner* v. *Walrod,* 83 Ill., 171.

In this case the plaintiffs permitted Mrs. Walton, without any notice, so far as the evidence discloses, that they claimed the right they now assert, to make lasting and permanent improvements upon the land; to expend large sums of money in making the improvements; to improve and develop the land until it was greatly increased in value. (The annual rental value of the land at the time of her purchase was about $800 or $1000. It increased to $2500. Evidently the value of the land was greatly increased.) They permitted her to pay off the debts of the estate of their deceased ancestor. And after she had improved the lands; spent large sums of money; the lands had greatly increased in value; the debts of the estate had been paid; and after about seven years had expired, they brought this action to set aside her purchase. To permit them to do so would be inequitable and unjust. They have not instituted their suit within a reasonable time. Their laches precludes them from relief, unless they can show a reasonable excuse for their delay.

The party, says the Supreme Court of the United States, in *Badger* v. *Badger,* 2 Wallace, 95, who appeals to the conscience of the chancellor in support of a claim, when there has been laches in prosecuting it, or long acquiesence in the assertion of adverse rights, " should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim; how he came to be so long ignorant of

his rights, and the means used by the respondent to fraudulently keep him in ignorance; and how and when he first came to a knowledge of the matters alleged in his bill; otherwise the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer." *Marsh* v. *Whitmore*, 21 Wall., 178; *McGaughey* v. *Brown*, 46 Ark., 25. So in *Sullivan* v. *Portland, etc., R. Co.*, 94 U. S., 806, 811, the same court said: "To let in the defense that the claim is stale, and that the bill cannot, therefore, be supported, it is not necessary that a foundation shall be laid by any averment in the answer of the defendants. If the case, as it appears at the hearing, is liable to the objection by reason of the laches of the complainants, the court will, upon that ground, be passive and refuse relief." *Richards* v. *Mackall*, 124 U. S., 183; *Wilson* v. *Anthony*, 19 Ark., 16.

Plaintiffs have shown no impediment to an earlier prosecution of their claim, or ignorance of their rights or the facts; nor have they shown any excuse for their delay further than has already been stated. It appears that one or more of them were married women at the time Mrs. Walton purchased, and have remained so. Can laches be imputed to them? 

3. Laches imputable to married women.

At common law, while a married woman remained under the disability of coverture, she could not be guilty of laches. In equity she is considered in all respects as a *feme sole* in respect to property settled to her sole and separate use. Under the constitution of this State, her real and personal property, acquired in any manner, are and remain her separate estate and property so long as she may choose, and can be devised, bequeathed or conveyed by her the same as if she were a *feme sole*, and are not subject to the debts of her husband. Under our statutes, property owned by her at the time of her marriage, or acquired by her afterwards, is and remains her sole and separate property, and can be used by her in her own name, and is not subject to the interference

or control of her husband. She can bargain, sell, assign and transfer her separate personal property, and carry on any trade or business, and perform any labor or services on her sole and separate account; and her earnings from her trade, business, labor or services are her sole and separate property, and can be used or invested by her in her own name. No bargain or contract made by her in respect to her separate property, or in or about her trade or business, under the statutes of this State, is binding upon her husband, or renders him or his property in any way liable therefor. She can be sued alone upon contracts made by her in respect to her sole and separate property, or in respect to any trade or business carried on by her; and can maintain an action in her own name for or on account of her sole or separate estate or property, business or services, or for damages against any person or body corporate for any injury to her person, character or property. In an action brought or defended by her in her name, her husband or his property is not liable for the costs thereof or the recovery therein. Whenever judgment is recovered against her, it can be enforced against her sole and separate property to the same extent and in the same manner as if she were sole. The statutes clothe her with the same property rights, and, with few exceptions, subject her to the same liabilities as her husband. She can manage her own property and bind herself by contract, with the exception of contracts to convey land, in respect to his property, separate trade or business, as fully and to the same extent as he can. Vested with the rights of property and the right to sue and be sued possessed by her husband, she is subject to the same rules which restrict and control his rights. For this reason it has been held by this court that she is barred by the statute of limitations which prescribes the time within which actions to recover land sold at judicial sales shall be commenced. For the same reason she can be guilty of laches. The disabilities of coverture in respect to her separate property having been removed, she is to the same extent relieved of its consequences. *Steines* v. *Man-*

*hattan Life Ins. Co.,* 34 Fed. Rep., 441, 444; *Burkle* v. *Levy,* 70 Cal., 250, 254; *Morrow* v. *Goudchaux,* 41 La. An., 711; *Lewis* v. *Barber,* 21 Ill. App., 638, 641.

As an infant is not *sui juris,* laches cannot be imputed to him during the continuance of his minority. But, following the analogy of the statute of limitations, it has been held that where time has commenced to run against the ancestor, it still continues to run against the minor heir. *Williams* v. *First Presb. Society,* 1 Ohio St., 478; *Henry* v. *Conn,* 12 Ohio, 193; *Wilsons* v. *Harper,* 25 W. Va., 179. Has it run against the minors in this action?

4. When laches imputed to infant.

In this case all the heirs were adults at the time of the death of their ancestor. But since that time one of them, Sallie E. Whitley, has died, leaving William M. and Daniel R. Whitley, who are minors, her only heirs. It is averred in the complaint and admitted in the answer that they were minors at the commencement of this action. But it nowhere appears when Sallie E. Whitley died. But it does appear in the petition of Mrs. Walton to the Jefferson probate court for dower in the estate of Solomon Walton, deceased, that she was dead when it was filed, and it was filed before the land belonging to Walton's estate was sold by his administratrix. The petition was verified by Mrs. Walton, and was admissible as evidence in this action in the nature of an admission that Mrs. Whitley was dead at the time it was filed in court, subject to rebuttal and explanation. *Parsons* v. *Copeland,* 33 Me., 370; *Bliss* v. *Nichols,* 12 Allen, 445; Wharton's Law of Evidence (3d ed.), sec. 838. So it appears that laches is not imputable to the minor heirs in this action.

5. When pleadings admissible as evidence.

Does the fact that Mrs. Walton had a subsisting life estate in the land assigned to her as dower, at and since the time of her purchase, affect the right of the adult heirs to have the sale of the reversion in the lands so assigned set aside? We think not. The purchase of Mrs. Walton was one entire transaction. All the lands, including the reversion, were conveyed by the administratrix by the same deed to the Altheimers; and in the same way were conveyed

6. Laches.

S C—7

by them to Mrs. Walton. The confirmation by the court of the sale to the Altheimers was one order. The improvements made on the land by Mrs. Walton were referable to the entire interest and estate which she claimed by virture of dower and her purchase. *Fee* v. *Cowdry*, 45 Ark., 410. The presumption is, she would not have made all of them if the plaintiffs had promptly asserted their rights. If they had, within a reasonable time, applied to a court of equity having jurisdiction, to set any part of the sale aside, their application would not have been granted, except upon equitable terms. Equity would have compelled them to do complete equity. That would have been the payment of all the purchase money paid by her for the lands, including the reversion, and to the value of such of the improvements as she was actually and solely induced to make by her entire purchase. So the avoidance of a part necessarily involved the whole of the purchase, as otherwise complete equity could not have been done. Their laches, therefore, affected their right to set aside the purchase of Mrs. Walton, wholly or in part.

The two minor heirs are entitled to one-fourth of the lands which were not set apart to the widow and one-fourth of the reversionary interest in the other lands. The other heirs have precluded themselves by laches from obtaining any relief. Mrs. Gibson is entitled to the other three-fourths.

Should the minor heirs be charged for any part of the improvements ?

7. When *bona fide* possessor entitled to improvement.

This court has heretofore allowed a *bona fide* possessor of land compensation for improvements, upon equitable principles, independently of statutes, in three classes of cases :

First. Where the adverse party held the legal title and was entitled to the possession. In such cases he was allowed to " off-set, or recoup in damages, the improvements he had made upon the land, to the extent of the value of the rents and profits during his occupancy." *West* v. *Williams*, 15 Ark., 682 ; *Marlow* v. *Adams*, 24 Ark., 109 ; *Jones* v. *John-*

*son*, 28 Ark., 211; *Felkner* v. *Tighe*, 39 Ark., 357; *Brewer* v. *Hall*, 36 Ark., 353.

Second.  Where the owner knew, or ought from circumstances to have known, that the party in possession under a claim of right was making valuable improvements upon his land, and made no objection nor asserted his rights within a reasonable time.  In such cases this court allowed the full value of the improvements, less the rents.  *Summers* v. *Howard*, 33 Ark., 490; *Grider* v. *Driver*, 46 Ark., 109.

Third.  Where the party in possession had acquired the legal title, and his purchase was set aside as fraudulent, not because of actual fraud, but on account of it being against public policy.  In such cases it allowed him compensation for the full value of his improvements, less the rents, and ordered to be refunded to him the purchase money and taxes paid by him and interest.  *West* v. *Waddill*, 33 Ark., 575; *Hindman* v. *O'Connor*, 54 Ark., 627.  In *Littell* v. *Grady*, 38 Ark., 584, the court found that the party in possession claimed under a title he acquired through actual fraud participated in by himself, and refused to allow him compensation for improvements, unless the adverse party claimed rents, and in that event ordered that he be allowed compensation to the extent of the rents but no further.

In other cases this court has allowed for repairs, as in *Robertson* v. *Read*, 52 Ark., 381, and *Jefferson* v. *Edrington*, 53 Ark., 545.  In the last mentioned case the court allowed the party in possession to off-set the rents by the value of such improvements as a prudent man would have deemed necessary to sustain the estate.

The rule followed by this court in the third class of cases is well sustained by the authorities.  *Ex parte Bennett*, 10 Vesey, 400, 401; *Robinson* v. *Ridley*, 6 Mad., 2; *Hawley* v. *Cramer*, 4 Cowen, 744; *Davoue* v. *Fanning*, 2 Johns. Ch., 271; *York Buildings Co.* v. *Mackenzie*, 8 Brown, P. C., 42; *Yeackel* v. *Litchfield*, 13 Allen, 419; *Davey* v. *Durrant*, 1 DeG. & J., 535; *Putnam* v. *Ritchie*, 6 Paige, 404, 405; Sedgwick and Wait on Trial of Title to Land, sec. 693; 2

Sugden on Vendors, star pages 897, 898; Lewin on Law of Trusts, page 491, sec. 2; page 493, sec. 8. The court in such cases acts upon the principle that the party who goes into a court as a complainant to ask equity must himself be willing to do what is equitable.

Mrs. Gibson is, therefore, entitled to some compensation for improvements. The minor heirs are entitled to one-fourth of the rents and profits of the lands which were not set apart to the widow as dower, which have accrued since the 15th day of October, 1879, the day on which the sale by the administratrix was confirmed by the probate court, and Mrs. Gibson is entitled to the other three-fourths. They should be charged in account with Mrs. Gibson with one-fourth of the proceeds of the sale by the administratrix of the lands which were not assigned as dower, and lawful interest thereon from the date of the payment thereof; with one-fourth of the taxes paid thereon by her since the sale and interest thereon; with one-fourth of the value of the improvements made by her on the same (the lands which were not set apart as dower), and with one-fourth of the proceeds of the sale by the administratrix of the reversion and interest thereon from the date of the payment; and should be credited with the one-fourth of the rents and profits to which they are entitled as before stated. Upon such an account being stated, the balance should be made a charge on the part or interest in the land belonging to the party against whom it may be found, and the payment of it (the charge) should be enforced according to the rules of equity.

The decree of the court below is therefore reversed, and the cause is remanded for proceedings consistent with this opinion.

MANSFIELD, J., did not participate.