## Montgomery *v.* Black.

### Opinion delivered April 22, 1905.

1. Trust—administrator speculating with estate.—An administrator will not be permitted to purchase at a sheriff's sale land sold under a judgment in favor of the estate which he represents, as his attitude

as bidder at the sale is in conflict with his duty to the estate. (Page 188.)

2. SAME—AVOIDANCE OF PURCHASE.—A purchase by a trustee of the trust property, though for an adequate price, may be avoided by the beneficiary. (Page 188.)

3. CONTRACT—ENFORCEMENT.—A contract between two creditors of the same debtor that the rents and profits of the latter's property shall be divided *pro rata* between them will be enforced. (Page 190.)

Appeal from Monroe Chancery Court.

JOHN M. ELLIOTT, Judge.

STATEMENT BY THE COURT.

This is a suit in chancery brought by appellees, John S. Black as one of the heirs and as creditor of S. L. Black, deceased, and Mallory, Crawford & Co., creditors of said S. L. Black, to set aside the sale of the lands in controversy made to Polk Montgomery, one of the appellants, by the sheriff of Monroe County, under orders of sale rendered by the circuit court and special execution issued thereupon. Montgomery, the purchaser of the lands, F. J. Robinson, administrator of the estate of S. L. Black, deceased, and T. H. Jackson, sheriff, were made defendants. It is alleged in the complaint that in 1893, one Charles Adams, then a resident of the State and owner of the lands in controversy, being indebted to defendant Robinson in the sum of $300 and to the firm of M. D. & J. W. Martin in the sum of about $1,200, delivered possession of said lands to his said creditors to secure said debts, and authorized them to rent said lands and apply the rents *pro rata* to the payment of their debts. That, pursuant to that arrangement, defendant Robinson took possession of the lands, and rented the same out, collected rents, etc. That after said lands had been delivered to them by Adams, who immediately removed from the State, it was agreed between Robinson and the Martins that neither of them would institute any suit against Adams affecting their respective rights in the premises, without notice to the other, and that whatever sums might be realized from the lands, either as rent or from sale of the land, should be shared between them in proportion to their respective claims against Adams. That, in violation of the agreement, Robinson, without notice to the Martins, brought suit against Adams, and caused an attachment to be levied on the lands, and obtained judgment at the

April term, 1898, of the circuit court for the amount of his debt, $410.71; and the Martins, after receiving information of that suit, also sued Adams, and attached the lands, and obtained judgment against Adams at the November term, 1898, for the amount of their debt $1,710.25. That, after the rendition of these judgments, the Martins assigned their said judgment and conveyed certain other property to Robinson as administrator of the Black estate in settlement of a debt owing by them to that estate,, which settlement was confirmed by the probate court. That thereafter Robinson caused the Adams land to be sold under said two judgments, and purchased them in the name of defendant Montgomery, who is his uncle, and applied the proceeds of the sale first to the satisfaction of his own debt, and the balance upon the Martin judgment. That the price for which the lands were sold, $664, was grossly inadequate, and that the lands were worth a great deal more than that amount. That on the day before the sale Robinson agreed with plaintiff, J. S. Black, that he, Robinson, would buy the lands for the Black estate, and that Black was thereby induced not to attend the sale.

The defendants filed separate answers, in which they both deny that the lands were bought for Robinson, and allege that, on the contrary, the purchase was made by Montgomery for his own benefit. Defendant, Robinson, in his answer also denied that he had made any agreement with the Martins concerning a division of the rents or proceeds of sale of the Adams land, or that he had agreed.with plaintiff, Black, to buy the lands at the sheriff's sale for the benefit of the estate of S. L. Black. He admits, however, that on the day before the sale he promised Black that he would buy the land for the benefit of the estate if he could do so legally, and would submit the question to his attorney, but that on the morning of the sale day his attorney advised him that he could not buy for the estate, and that he immediately sent word to that effect to plaintiff, J. S. Black, by a messenger, and caused the sale to be postponed until the arrival of a train upon which Black could have reached Clarendon, the place of sale.

The court, upon final hearing of the cause, rendered a decree in accordance with the prayer of the complaint, cancelling the

sale of the land to Montgomery, and requiring defendant Robinson to account for the rents and profits of the land, giving credit to the Black estate for a *pro rata* share thereof in accordance with the relative amounts of the two judgments against Adams.

*H. A. & J. R. Parker,* for appellants.

The objection that a sale of land was sold *en masse* can be raised by the defendant only. 34 Ark. 399; 51 Ark. 84; 64 Ark. 126. The same is true with reference to the bond required under section 5877 of Sandels & Hill's Digest. 66 Ark. 1; 62 Ark. 421. If a sale is fair in every respect, the court will not set it aside before confirmation; if the price is grossly inadequate, after confirmation it will not be set aside except for fraud. 44 Ark. 502; 47 Ark. 93; 53 Ark. 110; Rorer, Jud. Sales, § § 180-182; 65 Ark. 152; 56 Ark. 240; 66 Ark. 490; 64 Ark. 126; 55 Ark. 233. An administrator has no right to purchase. 26 Ark. 445; 28 Ark. 290; 23 Ark. 622. The sale cannot be collaterally attacked. 49 Ark. 397; Black, Judg. 245, 271; Crawford's Dig. 150. The attachments against the Adams property were regular. 66 Ark. 1.

*M. J. Manning and Grant Green,* for appellees.

The chancellor's findings will not be disturbed, unless against the preponderance of the evidence. 44 Ark. 216; 41 Ark. 294; 50 Ark. 185; 55 Ark. 112; 71 Ark. 605; 73 Ark. 489. A beneficiary cannot become the purchaser of property under his control. 33 Ark. 587. The judgment in the case of Robinson *v.* Adams, was rendered without notice. Kirby's Dig. § § 4424, 6042, 6058, 6111. The statute must be substantially and strictly complied with. 30 Ark. 723. A sale made without the bond under the statute is void. 40 Ark. 130.

*H. A. & J. R. Parker,* for appellants in reply.

If the purchaser pays to the creditor, whose recovery is sufficient to absorb the whole of the proceeds, the purchaser will be discharged unless the officer holds paramount claims upon such proceeds. 47 N. H. 341; 1 Doug. (Mich.) 417.

McCULLOCH, J., (after .stating the ' facts.)    The determination of this cause turns solely upon the question of fact whether appellant, Montgomery, became the purchaser of the lands in good faith, or whether he purchased for the benefit of Robinson. The latter, being administrator of the Black estate, had no more right to buy at the sheriff's sale than he would have had to buy at a sale of lands of the estate made by himself as administrator.

Leaving out of consideration the disputed fact of his having agreed to share the rents and proceeds of sale with the Black estate, he held, as such administrator, a judgment against Adams, and it was his duty to see that the property brought at the sale . the highest price obtainable.    He represented at the sale the interest of the Black estate, as much as he did his own; and if it be conceded that he was entitled to first satisfaction out of the · proceeds of sale, yet the duty rested upon him to see that the property brought as much as possible, and his relation to the estate· forbade that he should become the purchaser at the sale. His attitude as bidder at the sale was in direct conflict with his duty to the estate, and is strictly forbidden by salutary and well established rules.    *Cook* v. *Martin, ante,* p. 40;    *Imboden* v. *Hunter,* 23 Ark. 622; *Trimble* v. *James,* 40 Ark. 393; *Culberhouse* v. *Shirey,* 42 Ark. 25; *Clements* v. *Cates,* 49 Ark. 242; *Hindman* v. *O'Connor,* 54 Ark. 627; *Gibson* v. *Herriott,* 55 Ark. 85; *Thomas* v. *Sypert,* 61 Ark. 575.

The testimony is conflicting as to the value of the lands at the time of the sale, though we think it is shown by a fair preponderance that the value was considerably in excess of the · sum realized at the sale.    This is, however, unimportant, as a court of equity does not stop to inquire whether a trustee paid an adequate price for the forbidden purchase.    If he had no right to purchase at all, the sale is voidable at the option of his *cestui que trust.*

"As a rule, no one occupying a relation of trust or confidence to another is permitted to purchase property for himself when he has, by reason of such relation, a duty to perform in respect to it which is inconsistent with the character of a purchaser; or to do any other act which has a tendency to interfere with

the faithful discharge of such duty. It matters not how fair, profitable or advantageous the purchase may be to the *cestui que trust,* courts of equity will set it aside upon the application of the *cestui que trust.* The object of the rule is to protect the *cestui que trust* against fraud and injustice, and to remove from persons holding such relations all inducement and temptation to speculate upon or control, for their own benefit, property held by them in trust or confidence." *Gibson* v. *Herriott, supra.*

The chancellor found that the purchase by appellant Montgomery was colorable, and was made in his name for the benefit of Robinson. We think this finding is sustained by a preponderance of the testimony. It shows that he has continuously remained in possession of the lands, exercising acts of ownership over them, though he claims that he has been acting as agent for Montgomery since the date of the sale. Montgomery neither gave his note to the sheriff in compliance with the terms of sale, nor paid the purchase price. Of course, his failure to execute the note did not work a forfeiture of his purchase, but it is a circumstance tending with more or less force to show whether he was really the purchaser at the sale or bought for the benefit of Robinson. Robinson paid the costs, and neither of them made any satisfactory showing, in their depositions, concerning the payment of the purchase price. All that Montgomery says on the subject is in response to a direct interrogatory propounded by his attorney as to whether he had ever paid for the land, and he replies: "I have not paid for it in full, as I hold claims against some of the parties interested." He does not undertake to say how much he has paid, or who the "interested parties" are against whom he holds claims. The statements of appellant Robinson are equally uncertain and evasive. He does not pretend to know whether Montgomery ever executed a note or paid the purchase price. A careful reading of the testimony of both appellants does not fail to leave the impression that the terms of sale were never complied with by Montgomery, that he paid nothing, and that his purchase was only colorable. They were examined specifically upon these material points, and their evasive answers concerning a matter about which they could so easily have been definite and positive does not fail to convince an impartial hearer of the insincerity of their claim that the land

was bought in good faith by Montgomery. We therefore decline to disturb the finding of the court on this point.

Nor did the chancellor err in holding that the rents and proceeds of sale should be divided *pro rata* between appellant, Robinson, and the Black estate. One of the Martins testified that, when the lands were turned over to Adams, Robinson agreed that they should share the rents, and that no priority or advantage should be sought or obtained by either. That when he ascertained that Robinson had violated the alleged agreement by commencing suit against Adams, he complained to Robinson, and the latter agreed that no advantage should be taken of the fact that his attachment lien was prior in point of time, but that the two judgments should stand equally; and that Robinson reiterated this agreement when the Martin judgment was assigned to the Black estate. Robinson does not dispute the fact that he made the original agreement as stated by Martin, nor does he deny that he promised to inform the Martins of any step he might take toward enforcing his claim against Adams; but he denies that he ever agreed to divide the proceeds of sale, or to allow the Martin judgment to stand equally with his own.

Martin is a disinterested witness, and his testimony must control when in conflict with the uncorroborated statements of Robinson. Taking the facts as established by this testimony, it would be inequitable to permit appellant, Robinson, while in possession of the lands under this agreement, to gain an undue priority under his judgment lien. Under the assignment of the Martin judgment against Adams, the Black estate succeeded to all the rights of the Martins, and it was the duty of the administrator to preserve those rights. His attitude, then, was that of being in possession of the lands under an agreement to share the rents *pro rata* with the estate, and he must not be permitted to cut off the rights of the estate by selling the property under his own judgment. *Clements* v. *Cates, supra.*

The decree is therefore affirmed. But, inasmuch as the sale was valid as to Adams, and all parties, appellant Robinson and the appellees, are entitled to enforcement of the judgments against him, the cause is remanded with directions to enter a further decree for the sale of the land by a commissioner of the court upon such terms as the court may direct, and that the

net proceeds of sale shall be applied first to reimbursement of appellant, Robinson, for the amounts paid by him in redeeming the lands from tax sales and subsequently paid for taxes, and next *pro rata* on the said two judgments against Adams.

RIDDICK, J., not participating.