H. E. LONG, Plaintiff, v. THOMAS OLSON AND F. J. BOWMAN, Defendants, Appellees. J. W. Morrison, Intervener, Appellant.

**Cancellation of Patent:** NOTICE TO PARTIES AFFECTED. A patent regularly issued by the United States to the assignee of a military bounty land warrant could not be canceled seven years later by the commissioner of the land office, without any notice or opportunity to be heard to the parties interested.

**Tax Exemption Construed:** *Bounty warrants.* Act Congress, 1845, provided among other conditions attached to the admission of Iowa as a state, "that the bounty lands granted for military services during the late war shall while they continue to be held by the patentees or their heirs, remain exempt from any tax for the term of three years." At that time a federal statute prohibited the assignment of bounty warrants, but after the admission to statehood the prohibition was removed. *Held*, that though bounty warrants were thereafter assignable, the assignee was not entitled to the exemption during the three years.

**Tax Title:** *Laches of fee owner.* Where D. purchased military bounty land in 1869, having at such time constructive notice of its sale for taxes in 1865, and for nearly thirty years paid no attention whatever to the land, never visiting it nor paying taxes, during which time the claimants under the tax title were in possession cultivating and improving the land in the belief that it was rightfully theirs, he was estopped by his laches from claiming the land as against them, even if the tax sale was unauthorized.

*Appeal from Winnebago District Court.*—HON. J. F. CLYDE, Judge.

MONDAY, JANUARY 27, 1902.

ACTION in equity to quiet plaintiff's alleged title to a certain quarter section of land in Winnebago county. Defendant Bowman claims to be the owner of the north half and Olson claims to be the owner of the south half of said tract, while the intervener asserts title in himself adversely to both plaintiff and defendants. Such other facts as are necessary to an understanding of the issues are stated in the opinion. Judgment for defendant.—*Affirmed.*

*H. A. Brown* and *H. E. Long* for appellant.

*Geo. D. Peters* and *Cliggett & Rule* for appellees.

WEAVER, J.—In 1857 one Simeon Cummings, holding by assignment a military bounty land warrant issued to a soldier of the War of 1812, located the same upon the land in controversy, and on March 26, 1863, such location was confirmed by the issuance to Cummings of a patent for said tract. In November, 1866, Cummings died seized of whatever title the patent conveyed. There is evidence tending to show that the intervener's grantor, William Deering, had some joint or partnership interest with Cummings in the location of this and other bounty warrants, though such interest is not apparent of record. Before the patent issued, Deering, by deed duly recorded, conveyed his interest to Cummings. In 1869 the widow and heirs of Cummings conveyed to Deering a tract of land in another county, which deed contained a blanket or general

clause including, it is claimed, the tract in controversy. On the 18th of June, 1870, the commissioner of the general land office at Washington addressed a letter to the register and receiver of the local land office, reciting that the location by Cummings above referred to had that day been canceled "for the reason that it conflicts with a prior location by one Barbour," and similar entries were made upon the records of both offices. So far as appears, no notice was given to any party or person in interest of the contemplated cancellation, and no opportunity afforded to show cause against such order. From that time forward Mr. Deering made no apparent assertion of his claim of title to the land, paid no taxes thereon, and exercised no dominion or act of ownership over it for a period of 27 years. In the course of time, the land having become of material value, enterprising real estate agents in that vicinity began tracing the title, and in 1892 addressed inquiries to the land commissioner at Washington. It was then discovered by said officer that the order of June, 1870, canceling the Cummings location, was a mistake; that there was in fact no conflict with the location by Barbour; and thereupon said order was, by order of the commissioner set aside, the Cummings location reinstated, and a new patent issued in his name. In 1896, the plaintiff, H. E. Long, claiming to be a grantee of Cummings, instituted this action to quiet his title, but before the cause was reached for trial, it being made apparent that the deed upon which he relied was spurious, Mr. Long ceased further assertion of title in his own right, and now appears as counsel for the intervener. About this time an agent (in whose interest does not clearly appear) addressed Mr. Deering seeking a conveyance of his title to the subject of the litigation, and this inquiry had the effect to arouse in him the interest which had been slumbering since 1869. He thereupon secured another quitclaim from the Cummings heirs, and then in turn quitclaimed to intervener for the expressed consideration of $200. The land at the date

of said deed was fairly worth from $3,500 to $4,500. Prior to this transaction intervener was an entire stranger to the title, and his rights are such only as he obtained by the conveyance from Deering. We now return to the title asserted by the defendants. The land was assessed for taxation for the years 1861, 1862, 1863, and 1864, and, such taxes being unpaid, the same was sold by the treasurer at the annual tax sale in November, 1865, to one Church. No redemption being effected, treasurer's deeds for the land in 40-acre tracts were made to Church in February, 1869, and duly recorded at the time. Upon the title thus originating, transmitted through several mesne conveyances, the defendants resist the claims of intervener. Relying upon this title, they and their grantors have been in possession of the land for many years, controlling, cultivating, and improving the same, and paying taxes thereon. It is therefore important to inquire whether any good reason is shown for questioning the validity of the tax sale and deeds to Church. This proposition the appellant affirms upon the following grounds: (1) The land having been located with a military bounty warrant, was exempt from taxation for a period of three years from the date of the patent. (2) The entry of location having been canceled by the general land office, such entry and the patent issued thereon in 1863 must be treated as nullities, and the land considered a part of the government domain, and therefore untaxable at all times before the issuance of the patent in 1892. These propositions we will proceed to consider in the order stated.

I.   It is true that by act of congress in 1845 (5 Stat. chapter 76), among certain conditions attached to the admission of Iowa as a state, and thereafter consented to by act of the state legislature, it was provided "that the bounty lands granted or hereafter to be granted for military services during the late war shall, while they continue to be held by the patentees or their heirs, remain exempt from any tax   *   *   *   for the term of three years

from and after the date of the patents respectively." It is to be remembered in this connection that at the date of this compact between the state and the general government the assignment of bounty warrants and bounty rights was strictly prohibited by federal statute, and such probibition was not removed until several years after Iowa's full accomplishment of statehood. In view of the non-assignable character of bounty rights at that time, the term "patentee," as used in the act of 1845, was applicable only to the soldier, and it was to him and his heirs alone that the state consented the exemption from taxation should be reserved. The subsequent act of congress making bounty warrants assignable could have no effect to extend or enlarge the obligations which the state assumed in the original compact. This construction of the act and of the extent of the exemption of bounty lands from taxation is expressly annouced in *Sands v. Adams County,* 11 Iowa, 577. Regarding this authority as directly in point and being satisfied with the correctness of the conclusions there expressed, we hold that Cummings, as assignee of the bounty warrant, had no right to hold the land exempt from taxation. It follows, therefore, that, unless there be merit in the other objections raised by appellant, the land was taxable at all times after the entry of location in 1857. *Witherspoon v. Duncan,* 4 Wall. 210 (18 L. Ed. 339); *Stockdale v. Treasurer,* 12 Iowa, 536; *Parker v. Cochran,* 64 Iowa, 757.

II. We have now to inquire what effect, if any, the act of the general land office in canceling the Cummings entry had upon the taxable character of the land. It will be remembered that the land was entered in 1857; that patent had regularly issued thereon in 1863, and it was not until 1870—13 years after the original entry, 7 years after patent had issued, and 1 year after the Church tax title had accrued—when the commissioner undertook by a peremptory and *ex parte* order to "cancel" and set at naught the title of which the govern-

ment had devested itself by the most formal and effectual conveyance known to the law. It is hardly necessary to cite authorities to show that, no such arbitrary and dangerous power is vested in any mere executive or administrative officer of the government. The United States no less than its humblest citizen is bound by its solemn deed, duly executed and delivered, until relieved therefrom by due process of law after every party in interest has had opportunity to be heard. *U. S. v. Stone,* 2 Wall, 525 (17 L. Ed. 765); *Hooper v. Scheimer,* 23 How. 235 (16 L. Ed. 452); 19 Am. & Eng. Enc. Law, 350-356; *Bicknell v. Comstock,* 113 U. S. 149 (5 Sup. Ct. Rep. 399, 28 L. Ed. 962); *Moore v. Robbins,* 96 U. S. 530 (24 L. Ed. 848). The so-called cancellation by the commissioner must, then, be regarded as void, and of no force or effect to defeat the tax title. The patent issued in 1892, if of any value, simply served to clear the record title of the apparent cloud created by the unauthorized cancellation, and relates back to the original entry. *Flint R. Co. v. Gordon,* 41 Mich. 420 (2 N. W. Rep. 648); *Stark v. Starrs,* 6 Wall. 402 (18 L. Ed. 925.)

III. There is another and sufficient reason why intervener is not entitled to the relief demanded. His equities are measured by those which Deering had at the date of the conveyance in March, 1897, and Deering was indubitably estopped by his own laches to claim title against the defendants. He took his first deed from the Cummings heirs in 1869, with constructive notice of the tax deeds, and for nearly 30 years permitted the land to drop from his sight and attention as completely as if it had been engulfed by an earthquake. He never visited it, or, so far as is shown, inquired after it. He never paid a dollar of taxes upon it. He must be held to have known that the claimants under the tax title were in possession cultivating and improving the land in the belief that it was rightfully theirs; and he cannot, in good conscience, be permitted at this late day to step in and reap the profits of the labor of

those whom his silence has misled to their injury. See the authorities very fully cited in a somewhat similar case. *Withrow v. Walker,* 81 Iowa, 651. One cannot read the record in this case without being convinced that Deering's claim to this land was from the outset of the most nominal character, and that he never placed any value upon it beyond the small amount he might be able to obtain for a quitclaim to the holders of the tax title, or to some adventurous dealer in defective titles. So far as is shown, he never paid anything for it. He certainly never expended anything upon it, gave it no more attention than could be expected from the remotest stranger, and finally conveyed it away by quitclaim for not to execeed one-twentieth of its market value. A man whose name is a household word in several states for business ability and sagacity would not so deal with valuable property to which he believed he had a just and valid claim of right. Demands founded upon speculation in defective titles do not, as a rule, appeal to the favor of a court of equity; and where, as in this instance, the enforcement of the demand means the invalidating of a long recognized title in favor of a party holding a mere paper claim, for which he has parted with no adequate or substantial value, nothing but reasons of the most imperative character will justify the granting of such relief. No such reasons appear in this case, and the decree of the court below is AFFIRMED.