VESPASIAN WARNER, Appellant, v. MARY HAMILL, GEORGE HAMILL, FRANK L. SMITH, ET AL., Appellees, and DAVIS and ROBERTS, ET AL., Appellants.

**Wills:** DOWER: ELECTION BY WIDOW. By Code of 1873 a widow
1  given a specific bequest of personal property and a life estate in all other property, which included real estate, was not required to make an election but was entitled to take both the specific bequest under the will and a distributive share of the real estate under the statute, there being no provision in the will inconsistent with her dower right; under such circumstances she became seized in fee of a one-third interest in testator's real estate.

**Laches.** A mere speculator in titles who procures his deeds with-
2  out consideration and with knowledge that his grantors make no claim to the land conveyed, but have for years recognized the title of another, is bound by their laches and acquires no

interest in the property as against good faith purchasers of an adverse title who had no knowledge or notice of any claim of his grantors.

**Same:** BURDEN OF PROOF. Where abandonment of title and ownership are shown, in a partition proceeding, with equitable circumstances in favor of defendant from which laches may be imputed to plaintiff, the burden of proof rests upon plaintiff to excuse the laches.

**Vendor and vendee:** NOTICE. Where a vendee of land has knowledge of such facts, respecting the abandonment by his grantors of any claim to the land conveyed, as would put a man of ordinary prudence on inquiry he is chargeable with such knowledge as he might thus have gained; and in such cases matters of public record are constructive notice.

**Laches:** CONTINUANCE AS AGAINST MINOR HEIR. Where laches has run against an ancestor it continues against a minor heir the same ·as the statute of limitations.

**Contracts for sale of land:** RESCISSION. Where a purchaser of land on contract accepts the title after an examination of the abstract furnished, agreeing to take the land and pay therefor on the strength of the title as disclosed by the abstract, he cannot thereafter rescind and recover back the purchase money on the strength of imperfections in the title existing at that time.

*Appeal from Clay District Court.*— HON. W. B. QUARTON, Judge.

FRIDAY, MAY 17, 1907.

ACTION for the partition of real property. There was a decree dismissing the plaintiff's petition, and he appeals. An appeal was also taken by other parties to the action. — *Affirmed.*

*Birdsall & Birdsall, F. H. Hellsell, John Hamill,* and *G. H. Martin,* for appellants.

*F. F. Faville, R. S. Ludington,* and *James De Land,* for appellees.

SHERWIN, J.— It is conceded by all the parties interested in the event of this suit that prior to 1889 one James Brewer was the owner of the land in controversy, and that they all claim through him as the common source of title to said land. On March 28, 1889, James Brewer died testate in Iowa county, State of Wisconsin, seised of said land, leaving no lawful issue and leaving surviving him his widow, Grace Brewer. His will was duly admitted to probate in Iowa county, Wis., on May 7, 1889, and in Clay county, Iowa, it was admitted as a foreign will on May 7, 1895. By the ninth item of his will James Brewer gave $1,000 to his wife, Grace Brewer, " for her own use and benefit as she may see fit to use it." The only other provision of the will affecting the widow so far as the land in question is concerned is found in item No. 11 of the will which provides: " All the rest, residue and remainder of all my estate both real and personal wherever situated, I give, devise and bequeath the rents, use and profits thereof unto my wife, Grace Brewer, so long as she may live, and at her, my wife's decease, I give and bequeath all of said estate, both real and personal, unto my nephew, James Brewer, to have and hold the same unto his heirs and assigns forever from and after the decease of my said wife, Grace Brewer. The life interest in said estate herein given unto my wife is for her own use and benefit."

Grace Brewer died testate in February 1892, and her will was admitted to probate in Iowa county, Wis., April 12, 1892, and on February 20, 1905, it was admitted to probate as a foreign will in Clay county, Iowa. By the will of Grace Brewer, after certain charitable bequests were paid, the residue of her estate was given to eighteen nieces and nephews of her deceased husband. The estate was administered upon imediately after her death and settled within the two years following. Each of the legatees named herein received a little over $117 in full payment of their share of the estate of Grace Brewer, and they filed receipts to that effect. The

James Brewer referred to in item 11 of the will of James Brewer, and whom we shall hereafter designate as James Brewer, Jr., was the executor of the will, and after the death of the testator his widow, Grace Brewer, made her home with the James Brewer named in the will until her death. During her lifetime she accompanied James Brewer, Jr., to Iowa and inspected the land owned by her deceased husband, and until her death she received all the rents and profits arising from this land. Immediately after the death of Grace Brewer James Brewer, Jr., took possession of the land, rented and improved it, mortgaged it and paid all taxes thereon, and in April, 1898, conveyed the same by warranty deed, and it is through such conveyance that Frank L. Smith, one of the defendants herein, acquired title to the land subject to certain mortgages to the German Savings Bank of Davenport, Iowa. All of the conveyances after that of James Brewer, Jr., were by full warranty deed, subject only to the mortgages which we have already mentioned, and the several grantors had the actual possession of the land, paid taxes on the same while they held the title thereto, and made permanent and lasting improvements thereon. At the time of the death of Grace Brewer, the value of the land was from $8 to $10 per acre, and at the time of the trial of this case below its value was from $55 to $60 per acre. The several grantors purchased without any notice of any adverse claim on the part of Grace Brewer's legatees, and all of them paid full value after having the title examined and approved by their attorneys. In June, 1902, the defendant Frank L. Smith entered into a contract with Frank A. Davis and T. L. Roberts, defendants herein, for the sale of the land in controversy at an agreed price; Davis and Roberts agreeing to take the land subject to the mortgages to the German Savings Bank. In this contract there was a provision that Smith was to furnish an abstract showing good and merchantable title on or before February 1, 1903. The abstract was so furnished, and, some objections being made

thereto, the same was corrected and completed by Smith, and the abstract resubmitted to Davis and Roberts, who thereupon wrote Smith that the abstract had been passed upon by their attorneys and found to be all right, and that they accepted the same. The time for the performance of this contract was extended from time to time upon the application of Davis and Roberts, and because of their inability to meet the payments required thereby until in December, 1904, when Davis and Roberts, still finding themselves unable to comply with the terms of the contract, wrote to Smith, asking him to grant another extension of time, to which Smith replied that he was unable to do so. Thereupon Davis and Roberts entered into negotiations with Vespasian Warner, the plaintiff herein, to secure a loan from him to meet the payments called for by the Smith contract, and advising Warner of the terms and conditions of the contract and of the position they were in. Warner, after examining the abstract and the contract, and taking an assignment of the contract, applied to Smith for additional time in which to make the payments called for thereby, to which Smith replied that he could not extend the time beyond March 1, 1905. Thereafter, and before this suit was brought Warner obtained quitclaim deeds from fifteen of the legatees of Grace Brewer, quitclaiming to him any interest which they might have in the land in controversy, and soon thereafter Warner commenced this action in partition, claiming fifteen fifty-fourths of the land under these deeds. The defendant Smith resists this claim, and asks to have his title quieted to the entire tract of land as against the plaintiff and some intervening legatees of Grace Brewer, and as against Davis and Roberts. Smith filed a cross-petition, asking that the contract be declared forfeited. Davis and Roberts, as against Smith, ask that the contract be rescinded because of Smith's inability to pass the full title to them, and that Smith be required to return to them the money they have paid under the contract. Some of the legatees under the will of Grace Brewer, who deeded to War-

ner, answered, asking that the conveyances from them to Warner be set aside, on the ground that they were obtained by fraud, and claiming that Warner holds whatever title he acquired from them for the benefit of the true owner of the land. The trial court found that the plaintiff was not entitled to the relief asked, that he acquired no title by the deeds in question, and quieted the title to the premises in controversy in Smith as against the claims of Warner and the intervening legatees. As between Smith and Davis and Roberts, it was decreed that, unless said Davis and Roberts should pay the balance due on said contract on or before the 15th day of February, 1906, the contract should stand forfeited, and all rights of Davis and Roberts thereunder should cease and determine. From this decree the plaintiff, and Davis and Roberts, and the interest represented by the three legatees of Grace Brewer who did not deed to Warner, prosecute this appeal.

The legal proposition presented as between the plaintiff, Warner, and the appellee Smith, and those representing interests identical with his, is whether Grace Brewer was entitled to her statutory interest in the land in question upon the death of her husband, James Brewer, notwithstanding the provisions of his will, and the fact that she accepted the benefits provided by the will. The appellants contend that at the time of her decease Grace Brewer was seised of a dower interest or distributive share of the real estate in controversy, and the appellee Smith contests this proposition. Some legal propositions advanced by the appellants are not controverted by the appellees. The appellees admit that Grace Brewer acquired the title to an undivided one-third interest to the land in controversy immediately upon the death of her husband, James Brewer, unless the record in the case shows that she made an election, which is legal and binding, to accept the provisions made for her in the will of her husband in lieu of such interests in the real estate in controversy. The appellees also

1. WILLS: dower: election by widow.

admit the rule that the *lex rei sitœ* controls the title and disposition of real estate.   They make no question that the laws of this State as they were in 1889, when James Brewer died, must control the question of the descent and distribution of the real estate owned by him in this State.   The question is thus narrowed down to the proposition whether, under the laws of this State, Grace Brewer was required to make an election as to whether she would take under the provisions of the will or renounce such provision, and take what the statute gave her.   Section 2440 of the Code of 1873 provided that one-third in value of all the legal or equitable estates in real property possessed by the husband at any time during the marriage, which have not been sold on execution or other judicial sale, and to which the wife has made no relinquishment of her right, shall be set apart as her property in fee simple, if she survive him.   And section 2452 of the Code of 1873 provides as follows: " The widow's share cannot be affected by any will of her husband unless she consents thereto within six months after notice to her of the provisions of the will by the other parties interested in the estate, which consent shall be entered on the proper records of the circuit court."   Construing the last section noted, we have held that in order to estop the widow from claiming under the statute, notwithstanding the terms of the will, there must be a strict compliance with the requirement of the statute.   *Bailey v. Hughes,* 115 Iowa, 304; *Byerly v. Sherman,* 126 Iowa, 447.

It is well settled by authority in this State that the widow cannot be put to an election by the will of the husband, unless the intention to deprive her of dower is expressly stated, or is plainly manifest from the provisions of the will.   A will devising a life estate does not cut off dower, even though the widow remain in possession, during her life.   *Herr v. Herr,* 90 Iowa, 538.   In that case it is said, " it has long been the settled rule in this State that, when there is no express declaration in the will barring the dower of the wife,

the intention that it shall be barred must be deduced by clear and manifest implication, founded on the fact that the claim of dower would be inconsistent with the will or be so repugnant thereto as to defeat other provisions of the will." In *Daugherty v. Daugherty,* 69 Iowa, 677, the testator gave to his wife all of his personal property and certain real estate absolutely. He also gave her a life estate in certain land, with remainder in his son. The widow claimed the property given her by the will, and also claimed her dower interest in the lands devised to the son. It was held that she was entitled to the estate given to her absolutely by the will and to her one-third statutory interest in the land devised to the son; and in that case it was assumed that the widow had accepted under the will. We have held in many cases that, where a life estate is given to the widow by will with the fee to her children at her death, she takes her statutory interest which descends to her heirs upon her decease. *Bare v Bare,* 91 Iowa, 143; *Bently v Bently,* 112 Iowa, 625; *Watson v. Watson,* 98 Iowa, 132; *In re estate of Frank,* 97 Iowa, 704. In the last case cited it is said that a devise by a testator to his widow, when accepted by her, does not defeat her right to dower, unless the intention of the testator that such devise shall be in lieu of dower is shown by a declaration in the will to that effect or is clearly deducible from its terms, as where it appears that a claim for dower would be incompatible with the will, and that to allow it would defeat some provision of the will.

In this case there is absolutely no provision of the will of James Brewer that will be defeated by the allowance of dower to his widow. There is no declaration in the will to the effect that the bequests therein to the wife are to be in lieu of her dower. The legacy of $1,000 given to her by the ninth item of the will cannot be construed as indicating an intention on the part of the testator to deprive her of her dower right; and hence it is not inconsistent with her claim under the statute. We are therefore of the opinion that there was

nothing in the will of James Brewer requiring his widow to make an election, and, such being the case, she was entitled to take under the will and under the statute, whether she made any election or not.

The appellees concede the correctness of the rule above stated, but they do not concede that an election was not necessary under such rule. In support of their contention, they rely upon an Iowa case, *In re Will of Foster,* 76 Iowa, 364. It must be conceded that said case furnishes some ground for the appellee's contention, but there the controversy related solely to personal property, and it was held simply that, where the will gave the widow a life estate in all of the personalty, it would affect her legal share as contemplated by section 2452 of the Code, and that the widow was subsequently put to an election. The rule there announced has never been extended to cover any will where real estate was involved. On the contrary, we have refused to so extend it, and we do not consider it an authority controlling this case. On this branch of the case, we hold that Grace Brewer, upon the death of her husband, became seised in fee simple of a one-third interest in the land in controversy, and that upon her death it would have descended to her heirs.

The appellees contend, however, and this is one of the issues presented by the pleadings and determined by the trial court, that all of the legatees of Grace Brewer were guilty of such neglect and abandonment of the property

2. LACHES.

and of their right therein as to bar themselves and all parties claiming under them from any relief, because of their laches. It is a familiar principle of equity that the doctrine of laches does not depend for its application upon the statute of limitations, but is applied in analogy thereto. In *Winthrow v. Walker,* 81 Iowa, 651, it is said: "A court of equity will never be called into activity to remedy consequences of laches or neglect or the want of reasonable diligence. . . . It applies the rule of laches according to its own idea of right and justice." And further it is said

that " whether the time the negligence has subsisted is suffi-
cient to make it effective is a question to be resolved by the
sound discretion of the court." See, also, *Matthews v. Cul-
bertson,* 83 Iowa, 435, and cases therein cited; *Mickel v.
Walraven,* 92 Iowa, 430. We are abundantly satisfied that,
from the facts in this case, the court should not indulge in
overrefinement in applying the doctrine of laches to defeat
the plaintiff's recovery. He procured the deeds on which he
bases his title without consideration, and with the fullest
knowledge of all the facts and circumstances controlling the
situation of the parties. He knew that the grantors in his
deeds were not making any claims to the land in controversy.
He knew that these grantors had been aware of the claims
of James Brewer, Jr., ever since the death of Grace Brewer,
and he is charged with all of the equities which would exist
between his grantors and those claiming under James Brewer,
Jr. If his grantors would be held guilty of laches in assert-
ing their rights, he certainly would be, and, in addition to
this, he appears before the court in the light of a speculator
pure and simple, and not entitled to any special equities.

In a case similar to this in many respects (*Long v. Olson,*
115 Iowa, 388) we said: " Demands founded upon specu-
lation in defective titles do not as a rule, appeal to the favor
of a court of equity; and where, as in this instance, the en-
forcement of the demand means the invalidating of a long rec-
ognized title in favor of a party holding a mere paper claim,
for which he has parted with no adequate or substantial value,
nothing but reasons of the most imperative character will
justify the granting of such relief." The land in controversy
has greatly increased in value since the death of James
Brewer. During the period from the death of Grace Brewer
the land has been sold several times. It has been conveyed
under deeds under which the grantors or their estates are lia-
·ble. In each transfer the grantee was a good-faith purchaser,
parting with a fair and adequate value for the premises, and
without any suggestion of any notice or knowledge of claim to

the premises on the part of Grace Brewer's legatees. About thirteen years passed between the time of Grace Brewer's death and the time this action was begun. In the meantime the land had not only been sold and increased in value, as we have seen, but it was mortgaged, and permanent and lasting improvements have been put thereon. All of the taxes that have been assessed against the property for all of these years have been paid by the several owners, and during all of the time no one of the legatees ever visited the land, paid any attention to it, or made any claim to it in any way. All of them either knew of the land or by reason of the circumstances were chargeable with knowledge of it. Many of them knew that it had been sold and mortgaged. They knew that James Brewer, Jr., claimed to be the owner of and was disposing of it, and they swear that they never claimed to have any interest in the land whatever, and did not believe they were conveying any interest to Warner when they executed the deeds to him. Under these circumstances, we think the case brought within the rule of the cases which we shall hereinafter cite, and that the particular situation is aptly described in *Long v. Olson, supra*. The legatees permitted the land to drop from their sight and attention as completely as if it had never existed. They never visited it nor inquired after it. They never paid a dollar of taxes upon it, and they knew that James Brewer and his grantees were in possession, cultivating and improving the land in the belief that it was rightfully theirs. Such neglect and abandonment should constitute such laches as will deny a recovery. *Horr v. French,* 99 Iowa, 73; *Head v. Newcomb,* 89 Iowa, 732; *Hewitt v. Morgan,* 88 Iowa, 468; *Joseph v. Davenport,* 116 Iowa, 274; *Pitts v. Seavey,* 88 Iowa, 343.

Ignorance of the law will not protect a party from the operation of the rule (*Lucas v. Hart,* 5 Iowa, 415), and, where neglect and abandonment are shown with equitable circumstances in favor of the de-

3. SAME: burden of proof.

fendant from which laches may be imputed to the plaintiff the burden rests upon him to execute such laches. *Hammond v. Hopkins,* 143 U. S. 224 (12 Sup. Ct. 418, 36 L. Ed. 134).

A party is also chargeable with such knowledge as he might have obtained upon inquiry, where he knows facts which would lead a man of ordinary prudence to make such inquiry, and in such cases matters of public record are constructive notice. *Mickel v. Walraven, supra; Wood v. Carpenter,* 101 U. S. 141 (25 L. Ed. 807). This rule applies as well to the legatees claiming independently of the plaintiff.

4. VENDOR AND VENDEE: notice.

Where laches has started to run against an ancestor, it continues to run against a minor heir the same as the statute of limitations. *Gibson v. Herriott,* 55 Ark. 85 (17 S. W. 589, 29 Am. St. Rep. 25); *Wilson v. Harper,* 25 W. Va. 179; *Buck v. Davis,* 64 Ark. 345 (42 S. W. 534); *Grether v. Clark,* 75 Iowa, 383; *Black v. Ross,* 110 Iowa, 112.

5. LACHES: continuance as against minor heir.

We come now to the controversy between the appellee Smith and the appellants, Davis and Roberts. From the conclusion we have reached on the first point discussed, it is apparent that the title which Smith agreed to convey to Davis and Roberts was defective in the respect we have stated, and, if this were all of the case between Smith and Davis and Roberts, it is quite likely that a conclusion would have to be reached other than the one reached by the trial court; but the record shows that Davis and Roberts accepted the title presented to them after having the same thoroughly investigated by their attorneys, and formally agreed to take the land and pay the purchase price agreed upon on the title shown by the abstract furnished them, and, such being the case, they have never been and are not now in a situation to rescind their contract and recover back their money because of imperfections in Smith's title at that time. Moreover, it is

6. CONTRACTS FOR SALE OF LAND: rescission.

shown that these men were actively engaged in attempting to overthrow Smith's title to the land in controversy, and for that reason they are not entitled to any special consideration at the hands of a court of equity. The trial court protected their rights by giving them an opportunity to comply with the terms of their contract, and we think this all that they were or are entitled to. If they shall comply with the order of the trial court within sixty days of the filing of this opinion, they may have conveyance of the land as herein provided, otherwise, their contract will be forfeited.

The appellees filed a motion to tax the appellants a part of the costs of the printing of their abstract. In view of the disposition which we make of the case, it is unnecessary to pass upon this motion.

The judgment is in all respects *affirmed.*